# Chicago Consolidated Traction Company v. Fred Gervens.

## Gen. No. 11,198.

1.  RINGING OF BELL—*when evidence as to, is affirmative.*  Where witnesses having equal opportunity with others testifying to the contrary to hear and know whether or not a gong was sounded, testify that it was not, their evidence is deemed affirmative.

2.  INSTRUCTION—*when it is not error to refuse an, directing the jury to disregard matters heard upon the trial.*  Where the particular matters referred to arose by reason of a question which was asked and objected to and the objection sustained, it is not error to refuse an instruction directing the jury to disregard such matters.

3.  INSTRUCTIONS—*must not single out evidence.*  Instructions are improper which single out and render prominent certain parts of the evidence and which fail to take other competent evidence into consideration.

4.  INSTRUCTIONS—*when it is not error to refuse, based upon appellee's negligence.*  It is not error to refuse instructions which are predicated upon the negligence of the appellee, where the jury by a special finding have declared that no such negligence existed.

Action on the case for personal injuries.    Appeal from the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding.

Heard in this court at the March term, 1903.   Affirmed.   Opinion filed March 17, 1904.

JOHN A. ROSE and LOUIS BOISOT, for appellant; W. W. GURLEY, of counsel.

GRIDLEY, CULVER & KING, for appellee.

· · MR. JUSTICE BALL delivered the opinion of the court.

May 26, 1901, appellee was coming to Chicago from the northwest. He was on horseback riding southeast along Milwaukee avenue. He reached Jefferson about seven o'clock P. M. The night was dark and foggy. From Jefferson and running into the heart of the city appellant was operating along that avenue a double track electric street railway. The trolley poles are planted between the tracks. The in-bound cars run on the westerly track, and those outbound run on the easterly track. The usual speed of the cars was fifteen miles per hour. For a mile or more from Jefferson, in places, Milwaukee avenue has a wide and deep ditch on each side of the traveled way. At the place of the accident these ditches and the street car tracks occupy the entire width of the roadway. This avenue is the main traveled way leading from the northwest into the city. When appellee passed through Jefferson he went by the south-bound car, which was then at rest, waiting its schedule time. The motorman saw appellee pass the car and proceed along the avenue towards the city. When appellee had reached a point about one-half mile south of Jefferson, and while he was riding, as he says, in the westerly track, he saw the headlight of a car coming northwest on the east track. At this moment his horse was struck by the in-bound car and thrown to the left of the westerly track, while appellee was hurled against one of the trolley poles in the center of the street. The injuries inflicted upon the horse show that he was struck squarely from behind. The fender of the car was broken and the front dash-board was bent. The car ran from 150 to 225 feet after the collision before it came to a stop. The motorman was inexperienced.

Chicago Consolidated Traction Co. v. Gervens.

The evidence shows that this was his "second, third, or fourth night in the employ of the company." At the time of his injury appellee was thirty-two years of age, in good health, a bright, cheerful, industrious young man. Since then he is in poor health, forgetful, despondent, and unable to work regularly. The physicians say that his condition was caused by the accident, that it is permanent, and will grow worse. The trial resulted in a general verdict finding appellant guilty and assessing appellee's damages at the sum of $7,500. The jury also returned the following special verdict: "Was the plaintiff in the exercise of ordinary care . for his own safety immediately before and at the time of the happening of the accident in question?" Answer: "Yes." Judgment was entered, and this appeal perfected.

Appellant contends that the evidence fails to show negligence upon its part; does not show that appellee was in the exercise of ordinary care for his own safety, and that the court erred in instructing the jury.

*First.* Appellee does not know how he was hurt. He heard no bell and was not aware of the approach of the inbound car. Harmon and Stoneburg, passengers in the car, each swears that he did not hear the gong sounded or any other warning given before appellee was struck. Dreier, a farmer living by the scene of the accident, and in a position to hear it, testified that he did not hear the gong sound. These witnesses had equal opportunity, as had the motorman, to hear and to know whether or not the gong sounded. Hence in the legal signification of the term, the evidence of each of them upon this point is affirmative. C. & A. Ry. Co. v. Pelligreen, 65 Ill. App. 334; Rock Island, etc., Ry. Co. v. Hillmer, 72 Ill. 237; W. Chicago St. Ry. Co. v. Mueller, 165 Ill. 500.

Harmon testifies that at the time of the accident the car was running from ten to fifteen miles an hour. Stoneburg swears that the speed was fifteen miles per hour. Each of these witnesses says that the car ran at the same rate of speed from Jefferson to the place of the accident. After the accident the car ran, according to the testimony of

Harmon, Stoneburg and Dreier, from 150 to 225 feet before it stopped. The effect of the collision upon appellee, the horse and the car, would seem to indicate a high rate of speed at the time of the accident. The motorman knew the character of the roadway, that in places there was no passage except along the space occupied by the tracks. He knew the foggy condition that then enveloped the highway, and that appellee was somewhere ahead of him on horseback. It is true that the motorman swears he was running but six or seven miles per hour when the car struck the horse, and was ringing his gong; that when he first saw appellee "not more than half a car length from me," he was riding in the easterly track, but that when the car came almost abreast with him, the horse "suddenly turned right in front of the car;" and that he (the motorman) then threw off the power, set his brake and put on the sand, which was all he could do to stop the car. Harmon and Stoneburg each swears that while they were putting appellee in the car the conductor asked the motorman how the accident happened, and the latter replied, "I don't know; I didn't see the man until I struck him." There is ample evidence in the record to sustain the finding, which is inherent in the verdict, that appellant, by its servant, was guilty of negligence.

*Second.* Appellee says he rode in the westerly track from Jefferson to the place where he was hurt; that he looked back several times in each block to see if a car was coming; and that he did not see any light, nor hear any warning. Opposed to this is the testimony of the motorman as above set forth. This conflict in the evidence was for the consideration and the determination of the jury. By their special finding they decide that issue in favor of appellee. We have no right to reverse that finding; and if we had the power, we are not inclined to do so.

*Third.* The witness Harmon was called in rebuttal for the purpose of impeaching the motorman. While on the stand he was asked by counsel for appellee: "In that same conversation did you not hear the conductor tell the motor-

Chicago Consolidated Traction Co. v. Gervens.

man, 'Didn't I tell you when we started from Jefferson to be careful, that you had a man ahead of you?'" Appellant objected and the objection was sustained. Counsel for appellee said, " All right.    Yes, I guess that is not impeaching, Your Honor."

Counsel for appellant tendered the following instruction, which the court refused to give to the jury: " The court instructs the jury that any questions or statements of counsel that they may have heard during the trial of the case, as to what the conductor of the car in question said to the motorman, after the alleged injury, and while plaintiff was being placed upon the car, is irrelevant and immaterial, and the jury should entirely disregard the same." It was not error, at least not reversible error, to refuse this instruction when an objection had been sustained to the question to which it relates, and that question, in effect, had been withdrawn. Each of the refused instructions numbered 3 and 4 singles out and renders prominent certain parts of the evidence, and does not take certain other evidence into consideration, and is in effect covered by instruction No. 9 as given to the jury. Further, as each of these refused instructions is based upon the alleged negligence of appellee, and the jury by the special finding declared that no such negligence existed, appellant was not injured by its refusal. East St. Louis v. O'Hara, 150 Ill. 584. There is no reversible error in the changes which the learned trial judge made in appellant's 7th and 10th instructions before he gave them to the jury.

We are of the opinion that this case was tried without the intervention of material error, and therefore affirm the judgment of the Superior Court.

*Affirmed.*